**Patricia BECKHAM, Plaintiff,**

v.

**GRAND AFFAIR OF NORTH CAROLINA, INC., d/b/a The Cellar, and Kaleidoscope Productions, Inc., Defendants.**

No. C–C–86–499–P.

United States District Court,
W.D. North Carolina,
Charlotte Division.

Oct. 14, 1987.

Regan A. Miller, Charlotte, N.C., for plaintiff.

Richard L. Huffman, John Hasty, Waggoner, Hamrick, Hasty, Monteith, Kratt, Cobb & McDonnell, Charlotte, N.C., for defendants.

## ORDER

ROBERT D. POTTER, Chief Judge.

THIS MATTER is before the Court on Defendants' Motion to Dismiss Plaintiff's Amended Complaint for failure to properly serve the Amended Complaint, and for failure to demand a relief in the Amended Complaint. Also before the Court are Defendants' Motion for summary judgment on Plaintiff's Title VII claims alleging a failure to promote Plaintiff and retaliatory actions against Plaintiff because of her sex and because of her Title VII advocacy, and Defendants' Motion to dismiss Plaintiff's civil rights claims. Finally, Defendants'

Motion for Sanctions is presented. These Motions came on for hearing before this Court on September 2, 1987, all parties being represented by counsel. By Order of the Court, dated September 4, 1987, Defendant Kaleidoscope was dismissed from this case.

## I. COMPLAINT

Plaintiff filed her Complaint against Defendant Grand Affair and another Defendant, Kaleidoscope Productions, Inc., on October 30, 1986. She alleged that she had been employed by Defendant Grand Affair, doing business as "The Cellar", as a bartender. She claimed that Defendant had discriminated against her because of her sex by failing to assign her to the main bar, the most profitable bar in Defendant's business. She also claimed that Defendant had fired her in retaliation for her complaints of unfair treatment, and had retaliated against her further by having her arrested when she visited the bar as a paying customer. She also asserted causes of action under 42 U.S.C. §§ 1983 and 1985, claiming that Defendant had conspired with certain officers of the Charlotte Police force in having her arrested illegally. Plaintiff also alleged that Defendants had committed several torts under state law in connection with her arrest.

On November 14, 1986, before Defendants had answered, Plaintiff filed an Amended Complaint which, in the main, merely restated her previous allegations in a more organized manner. Defendants answered on November 24, 1986, specifically stating that their answer was filed "in response to the Amended Complaint of the Plaintiff." Affidavits of service were filed on December 5, 1986 showing that Plaintiff's counsel served "a copy of the Summons and Complaint in this action" upon Defendants via certified mail on November 7, 1986.

The factual allegations of Plaintiff's Complaint are as follows: Plaintiff was employed by Defendant as a bartender and performed her duties well. Despite repeated requests, Defendant's agents refused to assign her to the main bar, which is the bar at which bartenders can bring in the most tips. Plaintiff noticed that no female bartenders were allowed to work the main bar and brought this fact to the attention of Defendant's agents. On June 20, 1985, Plaintiff found that her name had been scratched from the work schedule. She questioned Derrick Presley concerning the failure to schedule her, and was told that the failure to schedule was a mistake. Plaintiff thereafter returned to the bar on several occasions; each time she found that her name was left off of the schedule and was told that she would be scheduled for work the following week. Finally, on August 20, 1985, Plaintiff concluded that she had been fired.

On October 31, 1985 Plaintiff visited the bar as a customer to attend a Halloween party. She became uncomfortable under Mr. Pressley's scrutiny there, and decided to leave the bar. As she was leaving, she was accosted by Mr. Presley, who ordered her off the premises. When she attempted to go to her car to wait for her friend, an off-duty police officer employed as a security guard for the bar told her she would have to leave the premises. Plaintiff drove to a parking lot across from the bar, parked, and walked onto the lot of a building adjacent to the bar. Fifteen minutes later, she was approached by Mr. Presley and the security guard. At Mr. Presley's instructions, the security guard told Plaintiff that she was under arrest. Almost immediately, a police officer arrived, conferred with the security guard and Mr. Presley, and informed Plaintiff that she was under arrest. Plaintiff protested that she was not on the bar's property, but that if she went to the police car she would be on the bar's property. The policeman responded that she was already under arrest and that it didn't matter. Plaintiff was placed in the police car, handcuffed, and taken to the County Jail. She was fingerprinted and placed in a cell for about four hours until she was bailed out. The criminal trespass charge was dismissed for lack of evidence on April 11, 1986. At the trial, agents of Defendant assisted the prosecutor.

## II. SERVICE OF AMENDED COMPLAINT

Defendant argues for dismissal of Plaintiff's Amended Complaint pursuant to Fed. R.Civ.P. 12(b)(5), on the ground that the Amended Complaint was not served upon Defendant as required by Fed.R.Civ.P. 4. Plaintiff filed the Amended Complaint before Defendant served a responsive pleading, and served the Amended Complaint by mailing a copy to Defendant's attorney, known to Plaintiff's counsel due to previous contacts. Defendant does not, and indeed cannot, contend that it was prejudiced as a result of the deficient service, for the only answer it filed specifically responded "to the Amended Complaint." Answer of Defendant Grand Affair, Inc. at 1.

Defendant's argument places it in a position likely to be unpalatable, for, if the Amended Complaint was never served properly, then the original Complaint, which Defendant has never answered, remains in force. *See International Controls Corp. v. Vesco,* 556 F.2d 665, 669 (2d Cir.1977) (original complaint remains in force until amended complaint is served properly). Surely Defendant does not wish the Court to hold it in default for failing to answer the original Complaint.

█ Defendant apparently is correct in asserting that the Amended Complaint, which incorporated a new theory of liability, should have been served on *Defendant,* rather than its attorney, as provided in Fed.R.Civ.P. 4. *International Controls Corp.,* 556 F.2d at 669; 4A C. Wright & A. Miller *Federal Practice and Procedure: Civil 2d* § 1146 (1987). But this fact results only in the original Complaint's remaining in force. The only new claim raised by the Amended Complaint, that based on 42 U.S.C. § 1985, has since been abandoned by Plaintiff; therefore, Defendant has succeeded only in maneuvering itself into precisely the same position it would have occupied had it never raised its objection to service of the Amended Complaint.

## III. FAILURE TO DEMAND RELIEF

Defendant next urges that the Amended Complaint should be dismissed for failure to demand relief therein. Since Defendant's objection to service of the Amended Complaint has rendered it of no legal effect, this ground for dismissal is moot. (It is possible to be too clever.)

## IV. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

*A. Sex Discrimination—Failure to Promote*

Defendant raises the pseudo-statute of limitations found in § 706 of Title VII, 42 U.S.C. § 2000e–5(e) (1982). *See Zipes v. Trans World Airlines,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982) (timely filing of charge is a requirement analogous to a statute of limitations). Plaintiff filed her EEOC complaint on January 27, 1986. Defendant contends that Plaintiff was fired—the last allegedly discriminatory act—on July 20, 1985. If Defendant is correct, then Plaintiff's Complaint was not filed within 180 days of the last allegedly unlawful employment practice as required by § 2000e–5(e), and Plaintiff's First Claim would be barred.

Plaintiff disputes that the firing occurred on July 20. According to Plaintiff's version, Defendant never firmly communicated to her that she was fired. Rather, after repeated attempts to determine why she was not being scheduled to work, she finally surmised that she had been terminated. Plaintiff's Deposition at 69–74. Plaintiff testified that the earliest date on which she formed the opinion that she had been fired was August 3, 1985.[1] Under Plaintiff's

---

1. Plaintiff testified as follows:

Q. In your Complaint you said you were fired on August 20th. Where does that data come from?
A. I made the assumption that I was fired because at that—after going back two or more weeks and realizing that I was still not put on the schedule, I sought other employment.
Q. So there was nothing magical about August 20th? It could have been before then or after then?
A. True.
Plaintiff's Deposition at 72.

version of the facts, her EEOC charge was timely filed.

■ Plaintiff's sex discrimination charge centers on Defendant's refusal to schedule her to work at the main bar. The last date on which this continuing discriminatory action could have taken place was, of course, the last date on which Plaintiff was employed. Plaintiff's deposition testimony creates an issue of fact sufficient to preclude summary judgment. Fed.R.Civ.P. 56.

### B. *Retaliatory Acts*

Plaintiff claims that Defendant's acts in firing her, and in having her arrested and prosecuting her for trespassing, were in retaliation for her assertion of Title VII rights. Defendant moves to dismiss so much of this cause of action as is based on the trespassing incident.[2] Defendant urges that Title VII applies only to employer-employee relations; therefore, since Plaintiff had already been fired when the arrest and prosecution occurred, no employer-employee relationship is implicated.

The Fourth Circuit has not yet ruled on the availability of an action for retaliation against a former employer for acts done after the employment relationship has ended. Both the Second and Tenth Circuits, however, have held that a former employee has a right of action for retaliation where the former employer governs its actions in connection with the former employee's personnel file with an eye toward the former employee's EEOC action. *Pantchenko v. C.B. Dolge Co., Inc.*, 581 F.2d 1052, 1055 (2d Cir.1978) (where employee claimed that former employer refused to issue letter of recommendation and made false and deprecating statements about former employee to prospective employers in retaliation for former employee's EEOC charge, defendant former employer not entitled to summary judgment on ground that complaint not covered by Title VII); *Rutherford v. American Bank of Commerce*, 565 F.2d 1162, 1165 (10th Cir.1977) (rejecting argument that, because former employee was no longer employed by defendant bank when bank committed alleged retaliatory acts of refusing to issue letter of recommendation and informing prospective employers that former employee had filed EEOC charge, no cause of action stated under Title VII). In addition, two district courts in the Fourth Circuit have allowed actions based on retaliation by a former employer. *Sparrow v. Piedmont Health Systems Agency, Inc.*, 593 F.Supp. 1107, 1119 (M.D.N.C.1984) (former employer's refusal to issue recommendation because of pending EEOC charge violated 42 U.S.C. § 2000e–3(a)); *E.E.O.C. v. Virginia Carolina Veneer Corp.*, 495 F.Supp. 775, 777 (W.D.Va.1980) (former employer's filing of state court action against former employee, claiming defamation by former employee's EEOC charge constituted retaliatory act). In particular, *Virginia Carolina Veneer Corp.* is pertinent here because the alleged act of retaliation there, as here, did not involve present or future employment (*cf.* refusal to issue letter of recommendation), but rather damaged the former employee personally.

■ This Court therefore is of the opinion that the allegation that Defendant caused Plaintiff to be arrested and prosecuted in retaliation for her having filed or contemplated an EEOC charge against Defendant states a cause of action against Defendant under 42 U.S.C. § 2000e–3(a). Of course, Plaintiff must yet prove her

---

Q. ... [Y]ou went and talked ... to somebody, maybe Tim, on July 20th?
A. Correct....
Q. And then you went back a third time and you say that may have been Saturday the 3rd or Sunday the 4th of August, or as late—
A. Correct.
Q. —as Tuesday the 6th, but you—
A. As late as, true.
Q. —but you think it was probably before then? So that time on either the 3rd, 4th or 6th was the last time that you talked to anybody there?

A. Correct.
Plaintiff's Deposition at 73–74.

**2.** Under the belief that Plaintiff's retaliation claim related solely to the trespassing charge, Defendant moved to dismiss the entire claim. A liberal construction of the complaint, however, would allow for two acts of retaliation: the discharge, and the arrest and prosecution. This Court will assume that the retaliation claim is based on both acts. Fed.R.Civ.P. 8(f).

case, and nothing in this opinion should be read to suggest a particular outcome on the merits of Plaintiff's claim.

### V. CIVIL RIGHTS CLAIMS

Defendant moved to dismiss the counts of Plaintiff's Complaint grounded upon 42 U.S.C. §§ 1983 and 1985. At oral argument, Plaintiff conceded the argument on the § 1985 claim and consented to its dismissal.

■ At the outset, the Court notes that Defendant's Motion to dismiss is untimely, having been filed after Defendant's responsive pleading to the Complaint. *See* Fed.R. Civ.P. 12(b) ("A motion making any of these defenses shall be made before pleading if a further pleading is permitted."). The Court nonetheless will rule on the merits of the Motion, since a motion for judgment on the pleadings would have been appropriate. *See* Fed.R.Civ.P. 12(h)(2).

The standard which a complaint must satisfy to avoid dismissal under Rule 12(b)(6) is well-settled: "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In the particular context of a § 1983 action, the "defendant must satisfy the trial court that there is no set of facts which will support an allegation that he or it (1) acted under color of state law, and (2) deprived plaintiff of a right 'secured by the Constitution and laws.'" *District 28, United Mine Workers v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085 (4th Cir.1979).

■ Defendant contends that Plaintiff has failed to state a cause of action under § 1983 because the named Defendant is a private corporation; therefore, Defendant urges, there is no action "under color of state law" involved in this case. But Plaintiff properly alleges, as Defendant concedes, a conspiracy between the named Defendant and certain officers of the City of Charlotte police department, culminating in Plaintiff's wrongful arrest and unsuccessful prosecution for trespassing. Though perhaps not as clearly as could be wished, Plaintiff's Complaint alleges that the arrest was unconstitutional because based on neither warrant nor probable cause. These allegations are sufficient to state a cause of action under 42 U.S.C. § 1983. *Cf. Pritchard v. Perry*, 508 F.2d 423, 425 (4th Cir.1975) (unconstitutional arrest gives rise to cause of action under § 1983 regardless of magnitude of harm to plaintiff).

Defendant continues its attack, however, and claims that the offending police officials are necessary and indispensable parties to the instant action. Defendant asserts, without any citation of supporting facts, that "without their [the police officers' and department's] presence, complete and effective relief would be impossible." Defendant further claims that it "could be subject to repeated lawsuits involving this same subject matter," if, for instance, Plaintiff later sues the police officers involved and they, in turn, implead Defendant.

■ Defendant states that the police officers and the City of Charlotte Police Department are "indispensable" parties to this action. In order to determine whether this statement is correct, the Court first must examine whether the officers and the police department are "necessary" parties under Fed.R.Civ.P. 19(a):

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. . . .

Clearly, the first step must be to examine the relief claimed. Plaintiff prays for an award of actual and punitive damages, reasonable attorney's fees, costs, and for such other relief as the Court may deem proper. There is no reason that the Court would be

unable to award to Plaintiff any and all of the damages to which Plaintiff is entitled from Defendant, thereby according complete relief among the parties, in the absence of the police officers and department. Fed.R.Civ.P. 19(a)(1) is not applicable.

Similarly, the officers and department claim no interest in the subject matter of the action, thereby precluding applicability of Fed.R.Civ.P. 19(a)(2). If, as Defendant hypothesizes, Plaintiff later did sue the police officers and department, who impleaded Defendant, Defendant would be entitled to "assert against the plaintiff any defenses which the third-party plaintiff has to the plaintiff's claim," including the defense that Plaintiff already has been compensated by a joint tortfeasor (Defendant) for the claimed injury. Therefore, even if Defendant could establish the applicability of the first clause of Rule 19(a)(2), it would be unable to satisfy subsections (i) or (ii). This Court sees no reason to join the police officers and department. "The right to contribution does not limit the plaintiff's right to select the defendant...." *Cox v. E.I. DuPont deNemours & Co.*, 269 F.Supp. 176, 178 (D.S.C.1967).

### VI. PENDENT STATE CLAIMS

Since this Court has determined that the § 1983 claim arising out of the Halloween incident must stand, so must the pendent state claims based on the same series of events.

### VII. MOTION FOR SANCTIONS

Defendant moved for sanctions against Plaintiff for Plaintiff's failure to provide Defendant with copies of certain tax returns. At oral argument, Plaintiff's counsel agreed to attempt to obtain copies of these tax returns from the Internal Revenue Service, and to provide Defendant's counsel with same. Accordingly, the Court will order that the requested tax returns be produced, but will not impose sanctions unless Plaintiff fails to comply with this Order.

NOW, THEREFORE, IT IS ORDERED that:

(1) Defendant's Motion to dismiss the Amended Complaint is GRANTED;

(2) Defendant's Motion for Summary Judgment is DENIED;

(3) Defendant's Motion to dismiss the claim based on 42 U.S.C. § 1985 is GRANTED;

(4) Defendant's Motion to dismiss the claims based on 42 U.S.C. § 1983 is DENIED;

(5) Defendant's Motion to dismiss the pendent state claims is DENIED; and

(6) Defendant's Motion for sanctions is DENIED and Plaintiff is ordered to produce the tax returns requested by Defendant within 15 days of the date of this Order.