**Warren McWILLIAMS, Plaintiff,**

v.

**MONARCH RUBBER COMPANY,
Inc., et al., Defendants.**

No. Civ.A. 2:99–0735.

United States District Court,
S.D. West Virginia,
Charleston Division.

Nov. 2, 1999.

Marvin W. Masters, Robert A. Taylor and Paula L. Wilson, Masters & Taylor, Charleston, WV, for plaintiff.

Niall A. Paul, Spilman, Thomas & Battle, Charleston, WV, J. Michael Weber, Spilman, Thomas & Battle, Parkersburg, WV, Douglas M. Topolski and Elena D. Marcuss, McGuire, Woods, Battle & Boothe, Baltimore, MD, for defendant.

### *MEMORANDUM OPINION AND REMAND ORDER*

HADEN, Chief Judge.

Pending are (1) Plaintiff's motion to remand; (2) Defendants' motion to dismiss, or in the alternative, for summary judgment; and (3) Defendants' motion for oral argument and to stay deadlines contained in the Order and Notice. The Court (1) **GRANTS** the motion to remand; (2) **DENIES** without prejudice the motion to dismiss, or in the alternative, for summary

judgment; and (3) **DENIES** the motion for oral argument and to stay deadlines.[1]

## I. FACTUAL BACKGROUND[2]

Plaintiff Warren McWilliams was employed by Defendant Monarch Rubber Company, Inc. (Monarch) as a mill operator at its Spencer, West Virginia plant. The plant manager was Defendant Jerry Greathouse. Greathouse was responsible for safety at the Spencer plant and for ensuring his operation was in compliance with all safety rules and regulations and OSHA requirements. In sum, he was charged with providing a safe workplace at the Spencer plant.

On May 25, 1999 McWilliams was operating an extruder milling machine. The machine has heated rollers that press the hot rubber. The machine had no safety guards that would prevent the operator's hands or arms from being pulled into the machine. In addition, the extruder milling machine's tripwire safety stop was 74 to 76 inches above the platform on which the operator stands, making it impossible for the operator to reach the tripwire safety stop if his hand or arm became caught in the machine. McWilliams asserts the defects were open and obvious to management and violated OSHA regulations.

The extruder milling machine has been used by Monarch for years, although the machine at issue was recently reinstalled from another location. Greathouse and other management were involved in the start up of the machine. The machine's tripwire safety stop intentionally was placed higher than allowed by law so that the milling machine could not be stopped unexpectedly. According to McWilliams, "Jerry Greathouse and Monarch valued production over employee safety." Pl.'s memo. in supp. at 2. On May 25, 1999

McWilliams' fingers were pulled into the rollers on the extruder milling machine. McWilliams was unable to reach the tripwire safety stop and, as a result thereof, McWilliams' hand and arm were pulled into the machine. A fellow employee saw what was happening and stopped the machine but not before McWilliams suffered fractures and severe burns to his fingers, hand and arm. OSHA cited Monarch for the unsafe tripwire safety stop.

On July 21, 1999 McWilliams filed a civil action against Monarch and Greathouse in the Circuit Court of Roane County, West Virginia. On August 25, 1999 Defendants removed, alleging Greathouse was fraudulently joined.

## II. DISCUSSION

■ In our Court of Appeals' most recent decision on the issue of fraudulent joinder, Chief Judge Wilkinson determined the exercise of removal jurisdiction inappropriate where there "is at least some possibility that plaintiff will recover against the" allegedly fraudulently joined party. *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 423 (4th Cir.1999). The court further stated:

> To show fraudulent joinder, the removing party must demonstrate either "outright fraud in the plaintiff's pleading of jurisdictional facts" or that "there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." ...
>
> The party alleging fraudulent joinder bears a heavy burden—it must show that the plaintiff cannot establish a claim *even after resolving all issues of law and fact* in the plaintiff's favor. *This standard is even more favorable to the*

---

1. The Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process. The motion to stay is moot, given the Court's disposition of the remand motion.

2. Given the heavy burden on Defendants, and the very restrictive standard of review, see *infra*, the Court takes McWilliams' view of the facts as true.

*plaintiff than the standard for ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6).*

*Id.* at 424 (emphasis added); *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 233 (4th Cir.1993) ("[O]nly a possibility of a right to relief need be asserted."); *Gum v. General Elec. Co.*, 5 F.Supp.2d 412, 415 (S.D.W.Va. 1998); *Pritt v. Republican Nat. Comm.*, 1 F.Supp.2d 590, 591–92 (S.D.W.Va.1998); *Slight v. E.I. Du Pont de Nemours & Co., Inc.*, 979 F.Supp. 433, 436 (S.D.W.Va.1997) (quoting *Watson v. Appalachian Power Co.*, 934 F.Supp. 191, 193 (S.D.W.Va. 1996)); *see also Lewis v. Armstrong Steel Erectors, Inc.*, 992 F.Supp. 842, 844 (S.D.W.Va.1998).

In commenting on plaintiff's factual forecast, Chief Judge Wilkinson stated as follows:

CSX contests these points and we are unable to resolve them with the snap of a finger at this stage of the litigation. Indeed, these are questions of fact that are ordinarily left to the state court jury.

In all events, *a jurisdictional inquiry is not the appropriate stage of litigation to resolve these various uncertain questions of law and fact.* Allowing joinder of the public defendants is proper in this case because courts should minimize threshold litigation over jurisdiction. *See Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 464 n. 13, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980) ("Jurisdiction should be as self-regulated as breathing; ... litigation over whether the case is in the right court is essentially a waste of time and resources.") (internal quotation marks omitted). Jurisdictional rules direct judicial traffic. They function to steer litigation to the proper forum with a minimum of preliminary fuss. *The best way to advance this objective is to accept the parties joined on the face of the complaint unless joinder is clearly improper.* To permit extensive litigation of the merits of a case while determining jurisdiction thwarts the purpose of jurisdictional rules.

. . . .

We cannot predict with certainty how a state court and state jury would resolve the legal issues and weigh the factual evidence in this case. Hartley's claims may not succeed ultimately, but ultimate success is not required to defeat removal. *Marshall*, 6 F.3d at 233. Rather, there need be only a *slight possibility* of a right to relief. *Id.* Once the court identifies this *glimmer of hope* for the plaintiff, the jurisdictional inquiry ends.

*Id.* at 425–26 (emphasis added).

Defendants devoted over sixty pages of briefing to the merits of McWilliams' claim and its susceptibility, not just to the exercise of federal jurisdiction, but also to immediate dismissal.[3] In contrast, McWilliams' lawyer offers a brief statement of facts, with several important considerations in an accompanying affidavit:

5. I have not had an opportunity to conduct discovery or take depositions in the above referenced matter.

6. Other than OSHA officials who investigat[ed] Monarch after plaintiff's injury, all persons with knowledge of the incident and the machinery involved are employed with Monarch, and cannot, out of fear, will not discuss their knowledge of the facts

---

**3.** Defendants' arguments, reduced to their essence, amount to an assertion that McWilliams has failed to plead the facts necessary to support his deliberate intention claim. They also suggest the claim is subject to a heightened pleading and proof standard. The Court's first duty is to resolve the motion to remand, a jurisdictional inquiry that is subject to the very plaintiff-generous fraudulent joinder standard. Application of the more restrictive *Rule* 12(b)(6) and *Rule* 56 standards urged by Defendants is more appropriately reserved for the state circuit court in the first instance. Also, if greater detail in the complaint might assist an early resolution of the dispute, the state court can compel additional explication of the initial pleading.

surrounding this case without a deposition.[4]

7. That defendants have possession of the machinery at issue and plaintiff's counsel and/or experts have not had an opportunity to inspect, photograph and/or videotape the same.

8. Defendants have not answered interrogatories or produced documents with information relevant to the case at hand.

9. Without proper discovery, it would be difficult if not impossible for me to respond to defendants motion for summary judgment[ ] with all facts essential to justify plaintiff's opposition to the same.

Affidav. of Paula L. Wilson at 2.

 Counsel's affidavit militates strongly against granting Defendants' motions at this juncture. As the Court observed in *Arthur*, fraudulent joinder "will be found when there is no 'arguably reasonable basis for predicting that state law might impose liability *on the facts involved.*'" *Arthur*, 798 F.Supp. at 369 (emphasis added) (quoted authority omitted). The "facts involved" at this stage of the case are basically the facts adduced by Defendants, in whose possession resides the machinery and in whose employ are several eyewitnesses.[5] Credibility determinations will likely be at the heart of the dispute, and granting Defendants' motions would have the effect of eliminating McWilliams' claims before he ever had the opportunity develop his version of the case. *Id.; Watson*, 934 F.Supp. at 194 ("Discovery is yet to begin ... and the Court has no reasonable basis for predicting that West Virgi-

nia law will not allow imposition of liability on Central Operating.").

In sum, the Court cannot say at this point that McWilliams' claim against Greathouse, much less Monarch, does not at least have a "glimmer of hope" of surviving. Accordingly, the Court **GRANTS** McWilliams' motion to remand.[6] Defendants' dispositive motions are **DENIED** without prejudice because the Court lacks jurisdiction to consider them. The remand is fully effective this date. The Circuit Court may proceed at its discretion.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record and a certified copy to the Clerk of Court for the Circuit Court of Roane County.

---

4. Defendants offer affidavits from these individuals attesting to the fact McWilliams' counsel has yet to attempt to discuss the case with them.

5. In at least two of the affidavits attached to Defendants' motion, certain eyewitness/employees attest they warned McWilliams not to stick his hands near the equipment that ultimately injured him. In accident reports written in their own handwriting just one day

following the accident, however, no mention of the admonitions was made.

6. The Court does so with the greatest reluctance, but it must bow to the strong dictate of the Court of Appeals. Acknowledging as it must that federal courts are forums of limited jurisdiction, the undersigned judge continues to invite the public and the bar to seek relief in this forum to the fullest extent permitted by law.